UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JASON S. BOX,

          Plaintiff,

v.                                       Case No.  5:06-cv-139-Oc-10GRJ

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,

          Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for a period of disability, Disability Insurance Benefits, and Supplemental Security Income.  (Doc. 1.)  The Commissioner has answered (Doc. 10) and both parties have filed briefs outlining their respective positions.  (Docs. 14 & 15.)  For the reasons discussed below, the Commissioner's decision is due to be **AFFIRMED**.

## I. PROCEDURAL HISTORY

On November 27, 2002, Plaintiff protectively filed his applications for a period of disability, Disability Insurance Benefits and Supplemental Security Income claiming a disability onset date of November 1, 2001. (R. 54-56.)  Plaintiff's application was denied initially (R. 38-39), and upon reconsideration. (R. 33-34.)  Thereafter, Plaintiff timely

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ conducted Plaintiff's administrative hearing on August 25, 2005 (R. 326-350) and issued a decision unfavorable to Plaintiff on October 6, 2005. (R.9-19.)  The Appeals Council denied Plaintiff's request for review on February 24, 2006. (R. 5-7.)  On April 14, 2006, Plaintiff filed the instant appeal to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the

---

[2] See 42 U.S.C. § 405(g).

[3] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from
(continued...)

district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[6]  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is

---

[5](...continued)
evidence on which the Commissioner relied).

[6] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] 20 C.F.R. § 404.1520(b).

[11] 20 C.F.R. § 404.1520(c).

disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of

---

[12] 20 C.F.R. § 404.1520(d).

[13] 20 C.F.R. § 404.1520(e).

[14] 20 C.F.R. § 404.1520(f).

[15] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

exertion.[18] In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. **SUMMARY OF THE EVIDENCE**

Plaintiff was born on August 22, 1979 and was twenty-six (26) years old at the time of the decision. (R. 329.) Plaintiff has a high school education (R. 330-331) and no past relevant work history. (R. 17, 64, 329-331.) Plaintiff contends that he is disabled due to a mental handicap, knee pains, shaky hands, poor memory, and problems dealing with people. (R. 88.)

---

[18] Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

[19] Walker at 1003.

[20] Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

Based upon the evidence submitted and the testimony presented at the hearing, the ALJ determined that Plaintiff suffers from the following impairments: low average to borderline intellectual functioning, a 1/2 inch leg length discrepancy with the left leg being shorter than the right, possibly resulting in left knee pain/instability, possible benign essential tumors, and a history of acid reflux and hiatal hernia. (R. 18.)

The Court's evaluation of the medical record will focus upon Plaintiff's alleged mental impairments, as that is the primary focus of Plaintiff's argument.

Plaintiff was evaluated by Gary Honickman, Ph.D. on February 19, 2001, at the request of the Office of Disability Determinations. (R. 274-275.) Dr. Honickman noted that Plaintiff was born prematurely by approximately three months, that Plaintiff was in Special Education classes, and that Plaintiff described himself as "slow." Plaintiff reported having trouble understanding directions and hurt his knee playing basketball in the Special Olympics a few years earlier. Plaintiff was driven to Dr. Honickman's office by his father and brought with him a plastic robotic-like toy.

Dr. Honickman noted that while Plaintiff was oriented in all three spheres and was able to recall seven digits forward and four digits backwards, his thought content was immature. Plaintiff liked to talk about toys, and Dr. Honickman found his insight and judgment to be poor. Notably, Dr. Honickman concluded that Plaintiff did not appear to suffer from any mental disorder.

Plaintiff returned to Dr. Honickman on February 22, 2003, again at the request of the Office of Disability Determinations. (R. 270-271.) Plaintiff was driven to the office by his brother and reported to Dr. Honickman that he does not drive. Dr. Honickman found Plaintiff oriented in all three spheres. Plaintiff reported hearing voices every few months

and sometimes they sounded like his deceased mother. Plaintiff's thought processes were organized and his thought content was situationally appropriate. Dr. Honickman found that Plaintiff's insight and judgment were poor.

Dr. Honickman administered the WAIS-III to Plaintiff. Plaintiff had a Verbal I.Q. of 91, a Performance I.Q. of 74, and a Full Scale I.Q. of 82. These results, which Dr. Honickman found to be valid, suggested that Plaintiff functioned within the Low Average range of intellectual ability. Dr. Honickman noted that he did not understand why Plaintiff was placed in classes for the educably mentally handicapped. Again, Dr. Honickman opined that despite Plaintiff's possible auditory hallucinations, he did not appear to suffer from any mental disorder.

Plaintiff was evaluated again by Dr. Honickman on February 2, 2004 at the request of the Office of Disability Determinations. (R. 268-269.) Dr. Honickman found Plaintiff was oriented in all three spheres, although he described his mood as anxious and confused. Plaintiff reported hearing voices every few months when nobody is there and was only able to recall three digits forward and backward. While Plaintiff's thought processes were organized, his thought content was somewhat immature and his insight and judgment were felt to be poor. Dr. Honickman diagnosed Plaintiff with Adjustment Disorder with Mixed Emotional Features, and noted that Plaintiff required the assistance in the management of any financial benefits to which could be entitled.

Non-examining state agency psychologist, Susan Conley, Ph.D, completed a Psychiatric Review Technique form on April 11, 2003. Dr. Conley found that Plaintiff had moderate limitations in the following areas: Plaintiff's activities of daily living, his ability to maintain social functioning, and his ability to maintain concentration, persistence or

pace. (R. 240.) Dr. Conley noted that Plaintiff was diagnosed with an organic brain syndrome, with I.Q. tests ranging from 57 to 79. Dr. Conley noted that Plaintiff was psychiatrically evaluated in 1993 at the age of 13 and he was unable to comb his hair neatly, roll up his pants, button all buttons on his shirts, and the Plaintiff had poor spelling and arithmetic skills. Plaintiff was socially immature and physically awkward. Dr. Conley concluded that Plaintiff appeared to function at borderline intellectual functioning level despite his variable I.Q. The variable I.Q. over the years is "suggestive of learning deficits and/or developmental issues." (R. 243.) Dr. Conley further opined that Plaintiff appeared able to perform a single, repetitive task. (R. 246.)

On February 17, 2004, Mark A. Williams, Ph.D. completed a Psychiatric Review Technique. (R. 276-293.) Dr. Williams found that Plaintiff suffers from a learning disorder as well as an adjustment disorder. (R. 277, 279.) Dr. Williams found that Plaintiff had only mild restrictions in his activities of daily living and ability to maintain social functioning. However, Dr. Williams found that Plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (R. 286.) Dr. Williams concluded that there was no evidence of serious mental illness and that Plaintiff's work demands should be relatively routine. (R. 288, 292.)

## IV. **DISCUSSION**

Although Plaintiff presents his argument in his brief as only one issue, he actually raises two arguments on appeal. First, Plaintiff suggests that the ALJ erred by failing to find that Plaintiff's mental impairments met or equaled the requirements of Listing 12.05(C). Secondly, Plaintiff contends that the ALJ committed reversible error in

applying the Medical-Vocational Guidelines instead of obtaining expert testimony from a vocational expert.

The Court will turn first to Plaintiff's argument that his impairments satisfied the criteria to meet Listing 12.05(C), for mental retardation.[23] To meet the requirements for Listing 12.05(C) a claimant must establish each of the following criteria:

> 12.05.   Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> * * * * *
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Plaintiff suggests that he has had organic brain syndrome since birth (R. 305), Plaintiff has had I.Q. scores ranging from 83 to 63, and in 1983, Plaintiff's I.Q. on the Stanford-Binet Intelligence Scale was only 61. In addition, Plaintiff argues that he suffers from hand shakes, right knee pain, and constant pain that prevents him from sitting or standing for more than 1 hour at a time.

While the ALJ did not provide a detailed discussion of the criteria for Listing 12.05(C), this deficiency is not dispostive because in the Eleventh Circuit even a cursory discussion of whether a claimant's impairments meet or equal a listed impairment is sufficient when the record, as here, shows that the claimant's impairments

---

[23] 20 CFR Pt. 404, Subpt. P, App.1, 12.05(C) (2007).

do not meet or equal a listed impairment.[24] Accordingly, the failure of the ALJ to mention Listing 12.05(C) in his decision is not, standing alone, a sufficient reason to reverse the decision of the ALJ.

Notwithstanding the ALJ's failure to mention Listing 12.05(C) in his decision it is reversible error where the substantial evidence of record does not support the ALJ's conclusion that the identified impairments do not meet or equal any listing. The Court must, therefore, review the medical evidence relied upon by the ALJ to determine whether this evidence supports the ALJ's conclusion that Plaintiff has failed to meet any listing. As discussed below, the evidence relied upon by the ALJ fully supports his conclusion that the Plaintiff has failed to meet any Listing, including Listing 12.05(C).

Pursuant to 12.00(D)(6)(c), in cases where more than one IQ is customarily derived from the test administered - such as in the Wechsler series where verbal, performance and full scale IQ's are provided - the lowest of these scores should be used in conjunction with 12.05.[25] However, because a claimant's level of functioning may vary considerably over time proper evaluation of a claimant's impairment must take into account any variations in the level of functioning in arriving at a determination of severity over time. It is therefore vital to obtain evidence from relevant sources over a

---

[24] Hutchinson v. Bowen, 787 F.2d 146, 1463 (11th Cir. 1986)(The ALJ is not required to "mechanically recite the evidence" because there may be an "implied finding that a claimant does not meet a listing."); Barron v. Sullivan, 924 F.2d 227, 230 n. 3 (11th Cir. 1991); Johnson v. Barnhart, 2005 WL 2175130 (11th Cir. 2005)(statement by ALJ that based upon medical evidence claimant did not medically or functionally equal a listed impairment is sufficient).

[25] 20 CFR Pt. 404, Subpt. P, App.1, 12.00(D)(6)(c) (2007); See Edwards by Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985).

sufficiently long period prior to the date of adjudication to establish the impairment severity.[26]

In the instant case, the ALJ discussed Plaintiff's IQ scores dating back to 1983. Plaintiff's IQ in 1983 was only 61, while Plaintiff's IQ scores ranged from 83 to 63 in 1991. The results of Plaintiff's IQ tests in February 2003, revealed that Plaintiff had a verbal score of 91, a performance score of 74 and a full scale score of 82.[27] When Plaintiff was evaluated in October 1997 at the age of 18, Plaintiff had a verbal score of 88, a performance score of 77, and a full scale score of 82.[28]

In the Eleventh Circuit, when there is a lack of IQ evidence before the age of twenty-two, a valid IQ test creates a rebuttable presumption of a fairly constant IQ throughout life.[29] However, this presumption only applies in situations where there is the absence of any evidence of a change in a claimant's intellectual functioning.[30] Here, the ALJ had the benefit of IQ evidence for a period of time spanning more than twenty years. While Plaintiff's IQ in 1983 may have been within the listing range, throughout the most recent six years of IQ testing, Plaintiff repeatedly scored above the listing requirements for mental retardation. Accordingly, because the IQ was not within the range in the listing for the past six years, the Plaintiff failed to meet his burden of satisfying this criteria of Listing 12.05(C).

---

[26] 20 CFR Pt. 404, Subpt. P, App.1, 12.00(D)(2) (2007).

[27] R. 271.

[28] R. 152.

[29] Hodges v. Barnhart, 276 F.3d, 1265, 1268-69 (11th Cir. 2001).

[30] Id (*citing* Muncy v. Apfel, 247 F.3d 728, 734 (8th Cir.2001)).

However, even assuming, *arguendo*, that Plaintiff met the IQ requirements of Listing 12.05(C), Plaintiff still failed to meet the criteria of the listing because he has failed to establish that he suffers from an additional physical or other mental impairment that imposes a significant work-related limitation of function.

Plaintiff argues that the Court should look to the disability evaluation prepared by Dr. Field of Hyperbarics of Ocala. (R. 228-229.) However, Dr. Field found that while Plaintiff complained of constant pain and that he can only sit or stand for 1 hour at a time, Plaintiff had no physical impairments. Dr. Field noted that Plaintiff had a normal range of motion of all joints and Plaintiff's grip strengths were 5/5 with normal fine manipulation. Straight leg raising was negative and cranial nerves were grossly intact. Motor examinations revealed muscle leg strength to be 5/5 and sensory exams revealed the presence of intact proprioception and pin prick.

Additionally, the ALJ noted that Plaintiff's right knee radiographs, taken from 2000-2003, were all normal.[31] Plaintiff's chest x-ray taken on October 22, 2002, after complaining of nausea and shortness of breath, was also normal. In response to Plaintiff's complaints of knee pain on September 26, 2003, Plaintiff was advised to limit his activities to low-impact activities and he was prescribed NSAIDS for discomfort. X-rays taken at Plaintiff's follow-up exam in November 2003 were also normal. Plaintiff was advised to continue with his over-the-counter medications for his knee swelling in

---

[31] R. 14.

May 2004 and to ice his knee. Plaintiff was also shown exercises for strengthening his quadriceps and calf muscles.[32]

Moreover, the ALJ noted that the non-examining state agency physician that evaluated Plaintiff on January 5, 2004 found that Plaintiff was limited to no more than light exertional work activities and that Plaintiff could lift and carry from 10 to 20 pounds and could sit, stand, or walk for 6 hours in an 8-hour workday.

Plaintiff points to no further information supporting his contention that he has an additional physical or mental impairment that imposes significant work-related limitation of function, nor does the evidence of record support a finding that Plaintiff suffers from any significant work-related limitation of function. As such, the Court finds that Plaintiff has failed to establish that he meets the requirements of Listing 12.05(C).

The Court will now turn to Plaintiff's second and primary argument that the ALJ erred by exclusively relying on the grids in lieu of obtaining the testimony of a vocational expert. Plaintiff contends that the fact that he suffers from borderline range of intellectual functioning is sufficient to establish that he suffers from a severe nonexertional impairment that significantly limits his basic work skills. However, the fact that a claimant has a borderline range of intellectual functioning does not necessarily mean that a claimant's capacity for work is compromised by nonexertional mental

---

[32] R. 15.

impairments.[33] If substantial evidence supports a finding that Plaintiff can perform a wide range of work at his RFC level, then the grids may be appropriately applied.[34]

The Court concludes that substantial evidence supports the ALJ's finding that Plaintiff's capacity for unskilled light work was not compromised by any nonexertional mental impairments. Plaintiff was evaluated by Dr. Honickman over a period of three years and Dr. Honickman found that Plaintiff was oriented in all three spheres and did not suffer from any mental disorder.[35] Plaintiff's thought processes were organized and his thought content was situationally appropriate. Dr. Honickman noted that he did not understand the reasons for Plaintiff's placement in classes for the educably mentally handicapped.

In addition to Dr. Honickman's findings, Dr. Conley found that Plaintiff only had moderate limitations in his activities of daily living, his ability to maintain social functioning, and his ability to maintain concentration, persistence or pace, [36] and that Plaintiff appeared able to perform a simple, repetitive task.[37] Dr. Williams found that Plaintiff had only mild restrictions in his activities of daily living and had the ability to maintain social functioning and only moderate difficulties in maintaining concentration,

---

[33] *See* Reliford v. Barnhart, 157 Fed.Appx.194 (11th Cir.2005).

[34] *See* Id.

[35] R. 270-271, 274-275

[36] R. 240.

[37] R. 246.

persistence or pace.[38] Dr. Williams concluded that there was no evidence of serious mental illness and that Plaintiff's work demands should be relatively routine.[39]

A Mental Residual Functional Capacity Assessment completed by Steven L. Wise, Psy.D., revealed that Plaintiff was not significantly limited in any area other than in his ability to understand, remember and carry out detailed instructions, and in his ability to set realistic goals or make plans independently of others. In fact, Dr. Wise noted that there was no history of any mental illness which precludes simple tasks and that Plaintiff "is not retarded." Dr. Wise further noted that there is "no history of psychosis. He reads, writes and follows instructions."[40]

In sum, the assessment of Plaintiff's mental RFC evidences that while Plaintiff faces some limitations in his ability to perform more detailed tasks, Plaintiff has no difficulties in completing simple tasks. Further, no physician or psychologist found that Plaintiff was significantly limited in his ability to work within a schedule, sustain an ordinary routine without special supervision, work in coordination with others without being distracted by them, or limited in his ability to make simple work-related decisions.

Accordingly, because there is substantial evidence supporting the ALJ's finding that Plaintiff's nonexertional impairments did not compromise Plaintiff's capacity to perform unskilled light work, the ALJ did not err by applying the grids instead of utilizing the testimony of a vocational expert in determining that the Plaintiff was not disabled.

---

[38] R. 286.

[39] R. 288-292.

[40] R. 204-205.

## V.  CONCLUSION

In view of the foregoing, it is hereby **ORDERED** that the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment accordingly and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on September 25, 2007.

```
_____
GARY R. JONES
United States Magistrate Judge
```

Copies to:
   All Counsel